Van Hoesen, J.
— The plaintiff in his capacity of sheriff levied an attachment against Harriet S. Briggs upon certain property claimed by George W. Galinger. Upon the assertion by Galinger of his claim the sheriff demanded a bond of indemnity, which was given to him, the defendants in this action being the obligors who executed the bond. The sheriff, being so indemnified, refused to surrender the property to Galinger. Mrs. Briggs then moved to vacate the attachment. The motion made to set aside the attachment was granted, and an appeal was taken from the order by which the attachment was vacated. Before that appeal came on for argument Galinger swears that he again demanded the property of the sheriff, and that the sheriff again refused to surrender it. Whether he did so or not Galinger brought his action for the value of the property, and the sheriff at once gave notice to the obligors of the bond of the fact that Galinger had brought suit against him. The obligors from that time forward participated in the defense of the action against the sheriff, and the attorneys for the plaintiff who sued out the attachment were present at the trial and took part in it. After Galinger had brought his action the appeal from the order that vacated the attachment was argued, but the order was affirmed.
When the action against the sheriff was tried the court excluded the defense set up by the defendant because the order that vacated the assignment deprived the sheriff of his justification for holding the property. The attachment having *24 fallen, the sheriff could not avail himself of it as a muniment of title. The action brought by Galinger was trespass, not trover, and the question of demand did not arise in the case. Galinger alleges in his complaint that the sheriff wrongfully entered his store, and wrongfully took possession of the property sued for, and under those allegations could recover damages for the invasion of his land as well as for the asportation of his goods. It is true that the judge at the trial seemed to suppose -that the issues were the same as if the action was between the sheriff and Mrs. Briggs, the defendant in the attachment; for he dwells upon the demand, though a demand could not be requisite if the goods that were seized under the attachment belonged to a person not named in the warrant. Galinger’s cause of action was complete when the sheriff took his goods under an attachment against Mrs. Briggs, and no demand was necessary. The ruling of the judge was correct, however, though the reason he gave for it was inappropriate. When it appeared that the attachment, which was the sheriff’s only warrant for the levy, had been set aside, his right to attack the title of Galinger no longer existed, and, therefore, the only duty that remained for the judge and the jury was to assess Galinger’s damages for the wrongful taking that he complained of. The criticism I have made upon some observations of the trial judge does not prevent me from giving full faith and credit, and full force and effect, to the verdict and to the judgment that was entered thereon.
The status of the parties to this litigation was not, in reality, at all affected by the question as to whether or not Galinger made a second demand upon the sheriff after the vacation of the attachment.
It is true that if the property had been surrendered by the sheriff, and accepted by Mr. Galinger, the action against the sheriff would not in all probability have been brought, but that would have been because Galinger did not see fit to prosecute his demand for damages for the original wrongful *25 talcing. If Galinger had seen fit to bring his action notwithstanding the return to him of the property that had been levied on, the sheriff would doubtless have looked to the indemnity bond for reimbursement. But it is argued by the defendant that as Galinger swore at the trial of his action against the sheriff that after the vacation of the attachment he demanded the return of the goods, and that the sheriff refused to surrender them, and as the sheriff did not at that trial offer testimony to contradict Galinger, the sheriff has lost the right to claim indemnity. The argument is that-section 709 of the Code provides that “ where an attachment is vacated or annuled, or an attachment is discharged upon the application of the defendant, the sheriff shall deliver the attached property to the defendant or to the person entitled thereto, upon reasonable demand or upon payment of all costs, charges and expenses legally chargeable by the sheriff,” and that this provision imposes a duty upon the sheriff that he must perform without respect to the interests of the plaintiff in the attachment, and without respect to his having been given a bond of indemnity. “When the attachment is vacated,” says the counsel for the defendants, “ it is the duty of the sheriff to surrender the property upon demand made, and he is doing a wrongful act not within the contemplation of the parties at the time the indemnity bond was executed if he persists in holding the goods.” This is begging the whole question. When the indemnity bond was given the sheriff had seized certain goods as the property of Mrs. Briggs, and Galinger had claimed them, and had demanded them of the sheriff. Wilkins and his associates, the plaintiffs in the attachment, then determined to dispute Galinger’s right to the goods, and to try the question of his title in the courts. Accordingly they gave to the sheriff the bond of indemnity, and required him to retain the goods in spite of Galinger’s asserted title until it had been determined by the judgment of a court whether Galinger or Mrs. Briggs was the owner of the property at the time it was levied on. The indemnity bond *26 has a very different meaning from that which counsel now seeks to ascribe to it. It was intended to impose upon the sheriff the obligation of keeping the property until the court should deciie whether Mrs. Briggs or Galinger was the rightful owner, and the sheriff would have made himself liable to the plaintiffs in the attachment if (he) had given up the goods before the question of Mrs. Briggs’ title to the goods had been passed upon by the court. It is true that the attachment was set aside as irregular (for the order shows that it was vacated upon the plaintiffs’ own papers), but that did not determine whether or not Galinger or Mrs. Briggs was the owner of the property, nor did it establish that Galinger had the slightest claim to it. It might well be that the attachment was irregular, but an adjudication to that effect did not determine that Galinger was entitled to the property, and as the court had not so decided, the sheriff was not bound to assume the risk of deciding the question, or of delivering the property to him merely because he said he was the owner. The plaintiffs in the attachment said he was not the owner, and if the sheriff had undertaken to surrender the goods to Galinger he would have been answerable in damages to the plaintiffs who had given him their bond of indemnity, unless he could show affirmatively that Galinger did actually own the goods at the time of the levy. In other words, by surrendering the property the sheriff would have stepped into Galinger’s shoes and become the antagonist of the plaintiffs instead of their bailiff. After the vacation of the attachment, a completed sale of the goods to Galinger could' not be impeached by the attaching creditors as fraudulent in fact, but it still was in their power to establish a defense by showing that Galinger had neither title to nor possession of the property. Again, the plaintiffs in the attachment were not content with the special term order that set aside the attachment, and they appealed. Suppose that the general term had reversed the order of the special term and held the attachment papers to be sufficient, what would the position of *27 the sheriff have been if he had given up the goods? Would not the plaintiffs in the attachment have said with overwhelming force, “ this is a valid attachment, and you levied goods under it; we want them; if you say that you have given them up, you must answer to us for their value; if you say that Galinger owned them, we answer that that is the very question that we wish to try, and because we wished to try it, we gave you a bond of indemnity; having that bond, it was your duty to hold the goods until the court adjudged Galinger to be the owner, or until we told you to give the goods up. The court has not passed upon Galinger’s title and we have never instructed you to yield to his demand.”
If this would have been the relation of the parties towards each other, can there be a doubt that it would have been wrong for the sheriff to surrender the goods even if after vacating the attachment Galinger had made a second demand. That this was the view of the obligors of this indemnity bond is incontestable. After this action was brought they went on with their appeal from the order that set aside the attachment, hoping, doubtless, that the order would be reversed and the attachment reinstated, so that they might still hold the goods. Can it be pretended that the plaintiffs intended whilst prosecuting their appeal to the general term to concede that Galinger was entitled to the property ? Was not the sole object of the appeal to secure and retain the goods that had been attached ? If the appeal had been successful, would there have been any complaint of the alleged refusal of the sheriff to acknowledge Galinger as the owner of the property ? Because their appeal failed, should they be allowed to repudiate the action of the sheriff ? The course of the sheriff met their views exactly until the result of the appeal disappointed their hopes. The attempt to make the sheriff responsible for the result of the Galinger suit is most unfair, for the blame, if blame there be, should fall on those who committed the irregularity in suing out the attachment.
Again, the attorneys for the plaintiff in the attachment, *28 with the full knowledge of the source from which the money was obtained, collected from the sheriff the proceeds of the goods that had been seized under the attachment. ' They paid this money to their clients. There is no question here as to the levy, nor any doubt that it was made with the sanction of the plaintiffs. The indemnity bond was given to protect the sheriff from loss by reason of his levy on these very goods in case Galinger established a title to them. The receipt of the proceeds of the sale by the plaintiff was under those circumstances a full ratification, if one were needed, of the acts of the sheriff in selling the goods under the execution.
The equities of the case are all with the sheriff. If Wilkins and Talbot had directed the sheriff to give up the goods after the attachment had been vacated by the special term, there would then have been a good defense to this action on the bond of indemnity. A refusal by the sheriff to surrender the property in such a case might well be said to be a wrong on his part for which he alone should be held liable ; but on the facts that have been presented to me, I can discover no principle of law nor any rule of fair dealing that would justify the rejection of the sheriff’s claim to indemnity.
Judgment for the plaintiff.